IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| BARRETTE LUKE ENNO, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV04-596-S-BLW |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| RANDY BLADES, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court in this habeas corpus action are the following:

Respondent's Motion for Summary Dismissal (Docket No. 10), Petitioner's Second

Motion for Extension of Time (Docket No. 20), and Petitioner's Motion to Withdraw

Claims, Amend Petition, and Interim Motions (Docket No 21).  Having reviewed the

record in the case, as well as the state court record, the Court finds that oral argument is

unnecessary and enters the following Order conditionally granting the Motion for

Summary Dismissal.

## I.

## BACKGROUND

Petitioner was convicted of first degree murder after trial by jury in the Sixth

Judicial District, Bannock County, Idaho.  Petitioner, who was eighteen at the time he

committed the murder, was sentenced to a fixed life term with no possibility of parole.

MEMORANDUM ORDER  1

Judgment was entered on April 28, 1989.  Petitioner's conviction and sentence were affirmed on direct appeal.  *See State v. Enno*, 807 P.2d 610 (Idaho 1991).

Petitioner next filed a state post-conviction petition.  The petition was dismissed with prejudice on September 20, 2001.  The Idaho Court of Appeals affirmed the dismissal on March 19, 2004, and the Idaho Supreme Court denied Petitioner's petition for review on July 28, 2004.

The present federal Petition for Writ of Habeas Corpus was filed on November 9, 2004.

## II.

## PETITIONER'S MOTIONS

### A.    Motion to Amend/Withdraw Claims

Petitioner has moved the Court to allow him to withdraw Claim Nos. 1 through 7 because he concedes that they are procedurally barred.  Petitioner has also moved the Court to allow him to file an amended petition.  Petitioner asserts that his present Claim No. 8 should be construed as factual support for his new claims.   Because his proposed amended petition consists of noncognizable claims, unnecessary legal argument, and a confusing recasting of Petitioner's present claims in an effort to avoid procedural default, the Court will not allow an amendment.

Upon considering Petitioner's Motion to Amend in light of the facts in the record, the Court can conceive of no constitutional claim that Petitioner could fashion that would bring him relief.  Habeas corpus is not the proper avenue to address errors in a state's

MEMORANDUM ORDER  2

post-conviction review process.  *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989), *cert. denied*, 493 U.S. 1012 (1989); *Williams v. Missouri*, 640 F.2d 140, 143-44 (8th Cir. 1981) ("[I]nfirmities in the state's post conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction [citation omitted]. . . . There is no federal constitutional requirement that the state provide a means of post-conviction review of state convictions. . . .  Errors or defects in the state post-conviction proceeding do not, ipso facto, render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings.  Habeas corpus in the federal courts does not serve as an additional appeal from state court convictions.  Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since [such a] claim . . . represents an attack on a proceeding collateral to detention of appellant and not on the detention itself").  Accordingly, allowing amendment would be futile.

**B.      Motion to Grant Interim Motions**

It is unclear what Petitioner means by "interim motions."  To the extent that the Court has ruled upon the foregoing Motions, the Motion to Grant Interim Motions is moot.

**C.      Motion for Extension of Time**

Petitioner has also filed a second Motion for Extension of Time to File Response to Respondent's Motion for Summary Dismissal.  It appears that Petitioner has chosen to file the foregoing motions rather than respond to the Motion for Summary Dismissal.

MEMORANDUM ORDER  3

Therefore, the Court deems the Motion moot.  The Court has considered the content of Petitioner's motions and proposed Amended Petition as his response.

Petitioner also asserts that he should have been given a copy of Respondent's lodging of state court records.  A petitioner is not provided with these records because it is assumed that he has obtained the records of his proceedings from his prior counsel.

The Court will provide Petitioner with an opportunity to review Respondent's Notice of Lodging of State Court Records to determine whether he is missing any records.  He may then notify the Court of any missing records.  The Court will determine whether the records are relevant, and will provide Petitioner with an opportunity to file a brief showing why the conditional granting of the Motion for Summary Dismissal should not be made final.

### III.

### MOTION FOR SUMMARY DISMISSAL

**A.    Standard for Dismissal and Factual Background**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  In such case, the Court construes the facts in a light most favorable to the petitioner.  Where summary dismissal on the face of the Petition or an order to answer may be inappropriate, Rule 4 authorizes the Court to "take such other action as the judge deems appropriate."  Summary dismissal is appropriate if, after reviewing the Petition, the

MEMORANDUM ORDER  4

state court record, and the pleadings or papers filed by Respondent, the Court determines

that Petitioner is not entitled to relief on his claims.  *See Roba v. U.S.*, 604 F.2d 215 (2d

Cir. 1979) ("The habeas corpus court is always entitled to dismiss the petition without a

hearing if the factual allegations are insufficient to warrant relief.") (relying on Rule 4,

Rules Governing Section 2254 Cases).

Petitioner's eight claims at issue are as follows:

1.      Petitioner's Sixth and Fourteenth Amendment rights were violated when the peremptory challenges were exercised in a manner that violated Idaho Code § 19-2030, which violation constituted fundamental error.

2.      Petitioner's Sixth and Fourteenth Amendment rights were violated when jurors who objected to the death penalty were excluded from the jury.

3.      Petitioner's Sixth and Fourteenth Amendment rights were violated when Jury Instruction No. 36 was submitted to the jury under the following circumstances: (A) after the trial court orally discussed the content of the instruction with counsel, (B) after the jury had commenced deliberations, and (C) without first providing a written copy of the instruction to defendant or his counsel.

4.      Petitioner's Sixth and Fourteenth Amendment rights were violated when the trial court gave a jury instruction on intoxication and specific intent different from the ones Petitioner preferred.

5.      Petitioner's Sixth and Fourteenth Amendment rights were violated when the trial court gave the jury duplicate instructions.

6.      Petitioner's Sixth and Fourteenth Amendment rights were violated when (A) the court admitted evidence of the defendant's involvement with a purported drug trafficker and (B) the court denied the defendant's motion for a mistrial.

7.      Petitioner's Sixth and Fourteenth Amendment rights were violated when the courted admitted post-mortem photographs and slides, because they were highly prejudicial and lacked sufficient probative value to outweigh the

MEMORANDUM ORDER  5

prejudice.

8.      Petitioner's Sixth and Fourteenth Amendment rights were violated when Petitioner's counsel failed to convey to Petitioner a plea bargain from the prosecutor.[1]

Petitioner has moved the Court to allow him to withdraw Claim Nos. 1 through 7, conceding that they are procedurally barred.  Nevertheless, because Petitioner is unrepresented, the Court shall review the propriety of dismissal of these claims.  The Court recognizes that if a *Teague* defense is raised by the respondent, the Court must first consider the *Teague* question before considering the merits, as instructed by *Horn v. Banks*, 536 U.S. 266 (2002).  The Court has done so.  Alternatively, if possible, the Court has also addressed the claims on the merits.   The Court notes that, for ease of explanation of some of the claims, the merits discussion sometimes precedes the *Teague* discussion.[2]

## B.      Standard of Law re Claims Precluded by *Teague*

To determine whether a claim is barred by the non-retroactivity principles set forth in *Teague v. Lane*, 489 U.S. 288 (1989), a reviewing court engages in a three-step process.  First, the court must ascertain the date on which the defendant's conviction and sentence became final.  *Caspari v Bohlen*, 510 U.S. 383, 390 (1994).  Second, the court

---

[1] This issue was brought in a post-conviction petition.  During post-conviction proceedings, the prosecutor and defendant acknowledged by stipulation a factual basis to grant Petitioner's petition and to resentence him, but the state court did not accept the stipulation and instead dismissed the post-conviction case.

[2] Petitioner asserts in his request to amend that he is actually innocent.  The record is devoid of any evidence showing that he would meet the actual innocence standard set forth in *Schlup v. Delo*, 513 U.S. 298 (1995).

MEMORANDUM ORDER  6

must survey "the legal landscape as it then existed" to determine whether existing precedent compelled a finding that the rule at issue "was required by the Constitution." *Lambrix v. Singletary*, 520 U.S. 518, 527 (1997). If the rule is considered "new," the court must proceed to the third step and determine whether either of the two announced exceptions applies. *Teague*, 489 U.S. at 307. The presumption against retroactivity is overcome only if (1) the new rule prohibits "a certain category of punishment for a class of defendants because of their status or offense," *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002), or (2) the case presents a new "watershed rule of criminal procedure" that enhances accuracy and alters our understanding of bedrock procedural elements essential to the fairness of a conviction. *Teague*, 489 U.S. at 311. *Teague* applies to procedural rules, not substantive claims. *Bousley v. United States*, 523 U.S. 614, 620 (1998).

## C.   Standard of Law Governing Merits Review

A petitioner cannot obtain federal habeas corpus relief merely by showing that the state court decision is "incorrect or erroneous"; rather, he must show that the state court's application of clearly established law is "objectively unreasonable." *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). The "unreasonableness" standard also applies to the state court's findings of fact: "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court record was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (citing *Lockyer v. Andrade*, 538 U.S. at 75, and *Torres v. Prunty*, 223 F.3d

MEMORANDUM ORDER  7

1103, 1107-08 (9th Cir. 2000) (same standard of unreasonableness applies to subsections

(d)(1) and (d)(2))).

In a federal habeas corpus proceeding, a state court's determination of a factual

issue is presumed to be correct.  28 U.S.C. § 2254(e)(1).  A petitioner may rebut the

presumption by clear and convincing evidence.  *See id.*  A federal court should not apply

the presumption of correctness to a state court's findings of fact if the petitioner shows (1)

that the material facts were not adequately developed in state court, or (2) that the court's

factual determinations are not fairly supported by the record.

**D.   Claim No. 1**

Petitioner asserts that his Sixth and Fourteenth Amendment rights were violated

when the peremptory challenges during jury selection were exercised in a manner that

violated Idaho Code § 19-2030.  Petitioner asserts that this amounts to fundamental error.

This claim is barred by *Teague*, because there is no United States Supreme Court case law

addressing this issue.  Neither *Teague* exception applies.

Alternatively, the Court concludes that this claim is subject to denial on the merits.

On direct appeal, the Idaho Supreme Court determined that, while the peremptory

challenge procedure was "irregular and is not a recommended practice, . . . because there

was no objection at trial and no prejudice has been shown, we do not find reversible error

in this procedure."  *State's Exhibit B-4*, at p. 7.

There is no constitutional right to peremptory challenges.  *See Stilson v. U.S.*, 250

U.S. 583, 589 (1919).  In *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988), the United States

MEMORANDUM ORDER  8

Supreme Court reiterated its long-standing rule that "peremptory challenges are not of constitutional dimension."  Therefore, because Petitioner has not shown that the Idaho Supreme Court's decision on this claim violates 28 U.S.C. § 2254(d)(1), it is subject to denial on the merits.

**E.      Claim No. 2**

Petitioner next asserts that his Sixth and Fourteenth Amendment rights were violated when jurors who objected to the death penalty were excluded from the jury.  He argues that the trial court's decision violated *Witherspoon v. Illinois*, 391 U.S. 510 (1968). In *Witherspoon*, the Supreme Court held that a defendant's Sixth and Fourteenth Amendment rights are violated if the jury imposing or recommending the death penalty "was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction."  *Id*. at 522.  In *Lockhart v. McCree*, 476 U.S. 162 (1986),  the Supreme Court held that the Constitution does not "prohibit the removal for cause, prior to the guilt phase of a bifurcated capital trial, of prospective jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties as jurors at the sentencing phase of the trial."  *Id*. at 165.  The *McCree* Court distinguished *Witherspoon* in a manner that makes *Witherspoon* inapplicable to the facts of Petitioner's case:

> In the case at bar, by contrast, we deal not with capital sentencing, but with the jury's more traditional role of finding the facts and determining the guilt or innocence of a criminal defendant, where jury discretion is more

channeled. We reject McCree's suggestion that *Witherspoon* and *Adams* have broad applicability outside the special context of capital sentencing.

*Id*. at 183.

Here, because Petitioner challenges the guilt or innocence phase of the trial and because Petitioner was sentenced by the court rather than by the jury, *Witherspoon* and *McCree* do not offer him relief on the merits of his claim.  To the extent that Petitioner is asserting that an extension of the law would be appropriate in his case, such a claim is barred by *Teague*, and no exception to *Teague* applies.

**F.      Claim No. 3**

Petitioner asserts that his Sixth and Fourteenth Amendment rights were violated when Jury Instruction No. 36 (regarding the verdict form) was submitted to the jury after it had commenced deliberations and a copy of the instruction was not first given to the defendant or his counsel.  The court had previously orally advised both counsel that it would instruct the jury on the verdict form.  The court later provided the jury with a written instruction that set forth the substance of the oral instruction as explained to counsel.  Neither counsel objected to the instruction.

United States Supreme Court precedent regarding jury instructions is scant.  It is well established that an instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  Petitioner points to no substantive error in the instruction, but points only to its timing and form.  Because there is no federal precedent

supporting petitioner's claim, the Court concludes that Claim No. 3 is barred by *Teague*, and neither exception to *Teague* applies.

Alternatively, Petitioner's claim fails on the merits because no error of constitutional dimension occurred. Idaho Criminal Rule 30 requires an Idaho trial court to read all of the instructions to the jury in open court. On Petitioner's particular claim, the Idaho Supreme Court decided that, "even though the trial court erred by not reading the instruction in open court or providing counsel with copies prior to the instruction conference, we fail to find prejudice and hold that the error was harmless." *State's Exhibit B-4*, at p. 15.

The Ninth Circuit has recently clarified that a federal habeas court reviewing a state court ruling of harmless error must review the state court decision in two steps: (1) the federal district court should first determine whether the state court's harmless error application was objectively unreasonable; (1) if the decision is objectively unreasonable, then the federal court "should engage in an independent harmless error analysis applying the standard articulated in *Brecht [v. Abrahamson*, 507 U.S. 619 (1993)]." *Inthavong v. LaMarque*, – F.3d –, 2005 WL 2008524, at *4 (9th Cir. Aug. 23, 2005). There being no prejudice alleged as to this error, the Court concludes that the Idaho Supreme Court's decision was not objectively unreasonable under *Cupp v. Naughten*, and therefore the claims fails on the merits under § 2254(d)(1).

**G.      Claim No. 4**

Claim No. 4 is that Petitioner's Sixth and Fourteenth Amendment rights were

violated when the trial court refused to give a more extensive voluntary intoxication jury instruction. *See State v. Hall*, 727 P.2d 1255 (Idaho Ct. App. 1986). In Petitioner's case, the trial court gave an instruction that mirrored I.C. § 18-166 (intoxication is no excuse for a crime). Petitioner argued that the trial court should have given an accompanying instruction, as in *Hall*, to more fully explain that the mens rea element could be negated by a finding of intoxication. The Idaho Supreme Court determined on direct appeal:

> In *State v. Hall*, 727 P.2d 1255 (Ct. App. 1986), the trial court added an additional instruction explaining the effect of I.C. § 18-116 on specific intent. The Idaho Court of Appeals held that the two instructions when read together were adequate to state the law. Although the additional instruction given in Hall further explained the relationship between intoxication and specific intent more than is stated in I.C. § 18-116, we note that the instructions given by the trial court in the instant case, when read together and considered as a whole, adequately explain the law and set forth defendant's theory of the case. Instructions that adequately and correctly state and explain the law are sufficient.

*State's Exhibit B-4*, at p. 17.

There is no United States Supreme Court precedent requiring that juries be instructed on involuntary intoxication as a way of negating mens rea. The United States Supreme Court has held that (1) a defendant's right to have a jury consider evidence of a defendant's voluntary intoxication in determining whether he possessed mental state required for conviction is not a "fundamental principle of justice," and (2) that a statutory ban on consideration of such evidence does not violate the Due Process Clause. *Montana v. Egelhoff*, 518 U.S. 37, 56 (1996). If *Teague* is applied in a narrow sense, Claim 4 is barred by that doctrine, and no exception to *Teague* applies.

MEMORANDUM ORDER  12

Alternatively, applying general United States Supreme Court precedent governing jury instructions, the Court concludes that Petitioner's claim does not warrant relief under such standards.  A jury instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  *Cupp v. Naughten*, 414 U.S. at 147.  In reviewing an ambiguous instruction, a court is to inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution."  *Boyde v. California*, 494 U.S. 370, 380 (1990).

Instruction No. 15 read as follows:

> You are instructed that there is an Idaho statute as follows:
> "No act committed by a person while in a state of voluntary intoxication is less criminal by reason on his having been in such condition.  But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, you may take into consideration the fact the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act."
> Whether or to what extent the defendant was under the influence of intoxicants is for you to decide.

*State's Exhibit A-2*, at p. 393.  Instruction No. 16 detailed the elements of first degree murder, second degree murder, and manslaughter, each addressing whether premeditation and intent were required.  *Id*. at 394.  Instruction No. 17 read: "You are instructed that intent is a question of fact for the jury.  The jury can infer from the facts surrounding the commission of the crime itself, the general criminal knowledge and intent requisite for the commission of the crime as charged."  *Id*. at 395.  Instruction No. 18 explained express and implied malice.  *Id*. at 396.

MEMORANDUM ORDER  13

Together with the other instructions given, the jury instruction on intoxication had a plain meaning.  It is not ambiguous, and there is no reasonable likelihood that the jury applied the instruction in a way that violates the Constitution, especially in light of the facts of this case.  The evidence showed that Petitioner inflicted bodily injury upon the victim by strangling her, striking her with his hand, striking her with a wooden board, kicking her, running over her with a vehicle, and setting fire to her, *and* that Petitioner had a specific recollection of each of the ways in which he inflicted bodily injury upon the victim directly after the murder, as he relayed the facts to his family members.

Danielle Enno, Petitioner's sister-in-law, testified at trial about the following conversation Petitioner had with her and Petitioner's brother within hours of the murder:

> Q.   Did [Petitioner] say anything about where physically on her body he kicked her?
>
> A.   No.  He just said he kicked her a couple of times.
>
> Q.   Did he mention anything about whether she was alive before she was run over by the car?
>
> A.   He just said it looked like she was still breathing.
>
> Q.   Do you recall his exact words?
>
> A.   He just said that "She wouldn't die, she wouldn't die."
>
> Q.   Did he give you any further information about how he ran over with the car?
>
> A.   He just said he drove over her, backed up over her, and then drove over her again.

*State's Exhibit A-6,* at p. 208.  (In addition, see recitation of the facts in *State v. Enno*, 807

MEMORANDUM ORDER  14

P.2d 610 (Idaho 1991)).  In light of the foregoing and the other evidence presented at trial, the Court finds unpersuasive Petitioner's argument that he should have been acquitted because his intoxication showed he did not intend to kill the victim.

For all of these reasons, the Idaho Supreme Court's decision regarding the intoxication instruction is not contrary to *Cupp v. Naughten* and *Boyd v. California*. Therefore, no relief is warranted on the merits of Claim No. 4.

**H.    Claim No. 5**

In Claim No. 5, Petitioner argues that his Sixth and Fourteenth Amendment rights were violated when the Court gave duplicate instructions to the jury.  The Idaho Supreme Court considered and disposed of this claim in the following manner:

> Enno correctly asserts that Instruction Nos. 23 and 24 are duplicative and repetitive.  While this repetition is error, it is harmless.  The trial judge recognized the duplication when he read the instruction to the jury and instructed them to ignore Instruction No. 24.  Furthermore, Instruction No. 2 instructed the jury that they should consider all of the instructions as a whole and that no emphasis is intended if a proposition is stated more than once.  Any error was corrected or is harmless.

*State v. Enno*, 807 P.2d 610, 622-23 (Idaho 1991).

To the extent that Petitioner's claim is considered a request for a new rule not dictated by prior precedent, the claim is barred by *Teague*.  No exception to *Teague* applies.  Alternatively, considering the merits of the claim, the Court concludes that the Idaho Supreme Court's decision on the duplicate instructions did not violate § 2254(d)(1) or *Brecht*, and that denial on the merits is appropriate.

**I.    Claim No. 6**

MEMORANDUM ORDER  15

Claim No. 6 is that Petitioner's Sixth and Fourteenth Amendment rights were violated when (A) the court admitted evidence of the defendant's involvement with a purported drug trafficker and (B) the court denied the defendant's motion for a mistrial. On direct examination at trial, Petitioner testified that he worked for "Joe" and that Joe's business was illegal.  On cross-examination (without objection), Petitioner testified further that his employer was Joe Giron, a cocaine dealer, and that Petitioner had driven Joe and a quantity of cocaine from Utah to Idaho.  The prosecutor then asked Petitioner whether it occurred to him that the illegal activities of his employer could hurt someone. Petitioner's counsel objected, and Petitioner did not answer the question.  Petitioner then moved for a mistrial outside the jury's presence.  *See State's Exhibit A-9*, at pp. 835-76.

The *in camera* discussion went as follows:

Mr. Zollinger:         Your Honor, it is with extreme reluctance that I do so, given the stage that we've reached in this proceeding, but I think that the questioning that Mr. Tranmer is pursuing is grounds for a mistrial.  I think it creates extreme potential for prejudice, which is absolutely unjustified.  The questioning that he is pursuing is not admissible under any rule of evidence.  He is attempting to establish bad character of another individual from which he would undoubtedly argue or have the jury infer that Mr. Enno has bad character in an area that has not been opened up.  It is absolutely improper rebuttal under any stretch of the imagination.

    Mr. Enno testified about one incident that was possibly unlawful.  He is now referring to all of his conduct as illegal. He has explained it.  I let it go that far because Mr. Enno opened it up.  Any further questioning along that line is absolutely unjustified.  It violates the Rules of Evidence, your Honor, and I think it is necessary at this point, because of the prejudice that is occasioned from it, that a mistrial be granted.

MEMORANDUM ORDER  16

The Court.          Mr. Tranmer.

Mr. Tranmer:          Thank you, your Honor.  Your Honor, I believe, as Mr. Zollinger said, direct examination has opened the door.  The issue is Mr. Enno's truth and veracity.  He has discussed the fact that he has not hurt people.  I think I can explore what his view of hurting people is.  I think the questioning that I have talked about is going to truth and veracity.  I'm not attacking his character.  I'm asking him questions concerning areas that he has talked about on direct examination concerning his own mind-set, what he feels constitutes hurting someone.

He has discussed things on direct examination about not remembering things.  I think the questioning on direct examination leaves open the issue of Mr. Barrette's [sic] ability to tell the truth, and I think that I should be able to explore the avenues that have already been discussed on direct examination, and I feel that there are not sufficient grounds for a mistrial since Mr. Enno himself testified as to illegal activities on direct examination.

I think the jury is entitled to know and I think it's better to explore those than to have them infer what illegal activities there are.  I would think it would be better for Mr. Enno to have those explained rather than let the jury be wondering about what illegal activities he's talking about.  Therefore, I don't think it has prejudiced the defendant and I don't think it's grounds for a mistrial.

The Court:          Thank you.  Mr. Zollinger?

Mr. Zollinger:          Your Honor, it is entirely a collateral matter.  We opened up no such topic.  He said there was one transaction.  The State pursued that.  To suggest that we are now going to determine whether Mr. Enno believes that the use of drugs is somehow harmful to society and is, in fact, injuring someone does not go to his truth and veracity, it does not go to his character for violence.  It's simply not an issue, your Honor, and I stand on the motion.

The Court:          Mr. Zollinger, I agree with you that it does not necessarily go to his truth and veracity, but the witness himself did not just testify about a single illegal transaction, but opened the

MEMORANDUM ORDER  17

door generally to illegal employment, and it's on that basis that I will allow the line of questioning that Mr. Tranmer is pursuing.  Your motion for a mistrial is denied.

Mr. Zollinger:     Your Honor, might I request that the questioning be limited to the topic that the Court just addressed and not to Mr. Enno's perceptions of what drugs are – whether they are or are not acceptable in society.

The Court:     I will grant that part of the Motion.

*State's Exhibit A-9*, at pp. 875-78.

On direct appeal, the Idaho Supreme Court held: "The trial court correctly sustained defendant's objection to the question[;] however, we find no valid reason to support appellant's argument that a mistrial should have been granted on the basis that the question was asked by the prosecuting attorney."  *State's Exhibit B-4*, at pp. 26-27.

There is no United States Supreme Court precedent expressly governing the issue of whether a mistrial should have been declared under these circumstances.  If analyzed in this narrow manner, *Teague* bars Petitioner's claims.  No *Teague* exception applies.

Reviewing more general precedent addressing mistrials and prosecutorial misconduct at trial, the Court concludes that Petitioner's claim is subject to denial on the merits.  The United States Supreme Court has noted that "[w]here, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, *the ends of substantial justice cannot be obtained without discontinuing the trial*, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried. . . ."  *Oregon v. Kennedy*, 456 U.S. 667, 677 n.7 (1982) (emphasis

MEMORANDUM ORDER  18

added).  In other words, there is a due process component in determining whether a

mistrial should be declared.  Similarly, the United States Supreme Court has stated that,

where a prosecutor has made offensive or improper comments, the relevant question is

"whether the prosecutor's comments "so infected the trial with unfairness as to make the

resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168

(1986) (internal citation and punctuation omitted).  Prosecutorial comments to which a

defendant has objected are reviewed for harmless error.  *United States v. Young*, 470 U.S.

1, 13 n.10 (1985).

Here, the trial court sustained the objection to the question of whether it occurred

to Petitioner/Defendant the illegal activities of his employer could hurt someone.

Petitioner/Defendant did not answer the question.  The prosecutor did not further pursue

that line of questioning.  In light of the fact that Petitioner had already testified about the

illegal employment on direct examination, and in light of the strong evidence of

Petitioner's guilt (including his own testimony, the testimony of his brother and sister-in-

law, and the circumstantial evidence), the Court concludes that the Idaho Supreme

Court's decision rejecting Petitioner's argument that a mistrial should have been granted

was not objectively unreasonable.  Accordingly, Petitioner's claim fails on the merits.

**J.      Claim No. 7**

Petitioner asserts that his Sixth and Fourteenth Amendment rights were violated

when the courted admitted post-mortem photographs and slides because they were highly

prejudicial and lacked sufficient probative value to outweigh the prejudice.  The Idaho

MEMORANDUM ORDER  19

Supreme Court treated this issue as a state evidentiary issue.  It is questionable whether a

federal claim arises from these facts.  In *Dowling v. U.S.*, 493 U.S. 342 (1990), the United

States Supreme Court distinguished state evidentiary issues from due process issues: "The

question . . . is whether it is acceptable to deal with the potential for abuse through

nonconstitutional sources like the Federal Rules of Evidence, or whether the introduction

of this type of evidence is so extremely unfair that its admission violates fundamental

conceptions of justice."  *Id*. at 352.

      The *Dowling* court went on to explain:

> Beyond the specific guarantees enumerated in the Bill of Rights, the Due
> Process Clause has limited operation. We, therefore, have defined the
> category of infractions that violate fundamental fairness very narrowly. As
> we observed in *Lovasco*, *supra*, at 790, [j]udges are not free, in defining
> 'due process, to impose on law enforcement officials [their] 'personal and
> private notions' of fairness and to disregard the limits that bind judges in
> their judicial function. *Rochin v. California*, 342 U.S. 165, 170 (1952).
> [They] are to determine only whether the action complained of  violates
> those 'fundamental conceptions of justice which lie at the base of our civil
> and political institutions, *Mooney v. Holohan*, 294 U.S. 103, 112 (1935),
> and which define the community's sense of fair play and decency, *Rochin v.
> California*, *supra*, at 173."

*Id*. at 352-53.  *See also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974), and

*Lisenba v. California*, 314 U.S. 219, 228 (1941) (in both cases, the court rejected the

defendants' arguments that error in their cases amounted to a due process violation under

the theory that the error "so infused the trial with unfairness as to deny due process of

law").

      The United States Supreme Court has not addressed the narrow issue that forms

MEMORANDUM ORDER  20

the basis of Petitioner's claim.  In 1988, in addressing the issue of admission of graphic

photographs of a decedent, Justice Scalia explained in dissenting opinion the unsettled

nature of the law on that issue:

> The photographs in question, showing gunshot wounds in the head and
> chest, and knife slashes in the throat, chest and abdomen, were certainly
> probative of the aggravating circumstance that the crime was especially
> heinous, atrocious, or cruel. The only issue, therefore, is whether they were
> unduly inflammatory. *We have never before held that the excessively
> inflammatory character of concededly relevant evidence can form the basis
> for a constitutional attack*, and I would decline to do so in this case. If there
> is a point at which inflammatoriness so plainly exceeds evidentiary worth as
> to violate the federal Constitution, it has not been reached here. The
> balancing of relevance and prejudice is generally a state evidentiary issue,
> which we do not sit to review. *Lisenba v. California,* 314 U.S. 219, 227-
> 228, 62 S.Ct. 280, 285-286, 86 L.Ed. 166 (1941).

*Thompson v. Oklahoma*, 487 U.S. 815, 878 (1988) (Scalia, J., dissenting).

Because this area of law was unsettled as of the date Petitioner's Idaho Supreme

Court case became final, Petitioner's Claim No. 7 is barred by *Teague*.[3]  The Court also

concludes that no exception to *Teague* applies.

**K.    Claim No. 8**

Petitioner asserts that his Sixth and Fourteenth Amendment rights were violated

when his counsel failed to convey to him a plea bargain offer from the prosecutor.  This

issue was brought in a post-conviction petition.  During post-conviction proceedings,

Petitioner and the prosecutor acknowledged a factual basis to grant Petitioner's post-

---

[3]The Court notes that a due process or unfair trial theory would not offer relief to
Petitioner because, notwithstanding admission of the photographs, other evidence of his guilt
was overwhelming.

MEMORANDUM ORDER  21

conviction and resentence him by stipulation, but the state court did not accept the stipulation and instead dismissed the post-conviction case.

On appeal of the post-conviction action, Petitioner argued that the state trial court erred in not accepting the parties' stipulation of facts and stipulation to resentencing as a matter of state law.  The Idaho Supreme Court rejected the claim, noting that the trial court had "determined that trial counsel's performance was not constitutionally deficient."  *State's Exhibit D-3*, at p. 3.

Assuming without deciding that the trial court's and the Idaho Court of Appeals's reference to the Sixth Amendment standard of law for ineffective assistance of counsel was sufficient to deem the issue exhausted, the Court concludes that Petitioner's claim does not meet the standard of relief under §2254(d)(1) or (2).

After receiving the parties' stipulation and holding three evidentiary hearings, the trial made the following findings of fact:

1. Mr. Zollinger, then counsel for Petitioner, approached Mr. EchoHawk, then Bannock County Prosecutor handling Petitioner's case, and explored the idea of a possible plea agreement.

2. Mr. EchoHawk informed Mr. Zollinger that he would accept nothing less than a guilty plea to first degree murder.

3. After discussions with Mr. EchoHawk, Mr. Zollinger discussed with Petitioner his plea options and Petitioner elected to go to trial rather than enter a guilty plea.

4. Mr. Zollinger discussed all relevant information with Petitioner and addressed all of Petitioner's questions and concerns prior to and during the trial.

*State's Exhibit D-2*, at p. 119.

Based upon the foregoing findings of fact, the Court made the following

conclusions of law:

1.   Mr. Zollinger's representation of Petitioner met or exceeded the standards for attorney representation of a criminal defendant.

2.   Petitioner is entitled to none of the relief requested in his Second Amended Petition for Post-Conviction Relief.

*Id*.

Here, a review of the record demonstrates (1) that the trial court offered the parties

extensive evidentiary hearing opportunities and (2) that the trial court's factual findings

are supported by the record.  The trial court explained its credibility determinations in

deciding among controverted pieces of evidence, and its determinations appear

reasonable in light of the record.

As a result, this Court concludes that the Idaho state courts' decisions that trial

counsel was not ineffective in conveying any plea bargain offer was not contrary to, or an

unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984).  In addition,

the decision was not based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.  Therefore, Petitioner's claim fails on

the merits under 28 U.S.C. § 2254(d)(1) and (2).

The Fourteenth Amendment offers no further relief to Plaintiff.  Due process is not

offended under these circumstances.  There is no United States Supreme Court precedent

holding that parties are absolutely entitled to the benefit of stipulated facts which are in

conflict with facts presented at an evidentiary hearing.   Therefore, a due process claim is barred by *Teague* or subject to denial on the merits.

## IV.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Dismissal (Docket No. 10) is CONDITIONALLY GRANTED.  Petitioner shall notify the Court whether he is missing any state court records no later than fifteen (15) days after entry of this Order.  Thereafter, the Court will provide Petitioner with any relevant records or notify Petitioner that none are relevant. Petitioner shall then have an additional thirty (30) days in which to file a brief showing that the Order conditionally granting the Motion for Summary Dismissal should not be made into a final order.

IT IS FURTHER HEREBY ORDERED that Petitioner's Second Motion for Extension of Time (Docket No. 20) is MOOT.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion to Withdraw Claims (Docket No 21-1) is MOOT.  The Court has considered and denied the claims on the grounds set forth above.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion to Amend Petition (Docket No. 21-2) is DENIED.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion to Grant Interim Motions (Docket No. 21-3) is MOOT, insofar as the Court has ruled on the Motions set forth above.

MEMORANDUM ORDER  24

DATED:  **September 8, 2005**



B. LYNN WINMILL
Chief Judge
United States District Court